UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONNOR GROUP GLOBAL SERVICES, LLC,<br>a U.S. Virgin Islands Limited Liability Company<br><br>Plaintiff,<br><br>v.<br><br>RSA SECURITY LLC,<br>a Massachusetts Limited Liability Company<br><br>Defendant. | **COMPLAINT<br>AND JURY DEMAND**<br><br>Civil Action No.: |

Plaintiff, Connor Group Global Services, LLC ("Connor Group" or "Plaintiff") by its attorneys, Rupp Pfalzgraf LLC, and Paik Brewington & Deal, LLP, as and for its Complaint ("Complaint") against Defendant, RSA Security LLC ("RSA" or "Defendant") alleges as follows:

**INTRODUCTION**

1. This case involves Connor Group's provision of services in good faith and in satisfaction of its contractual obligations to RSA, and RSA's unjustified refusal to compensate Connor Group for those services in material breach of RSA's contractual obligations.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.00.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the Defendant has its principal place of business in Massachusetts, and because the parties have submitted to the exclusive jurisdiction of this District.

## PARTIES

4. Plaintiff is a foreign limited liability company organized under the laws of the United States Virgin Islands and has its principal place of business at 8170 Crown Bay Marina PMB 52, St. Thomas, USVI 00802.

5. Defendant is a domestic limited liability company organized under the laws of Massachusetts and has its principal place of business at 174 Middlesex Turnpike, Bedford, Massachusetts 01730.

## STATEMENT OF FACTS

6. Connor Group is a specialized professional services firm that provides, *inter alia*, technical accounting and financial operations advisory and consulting services, initial public offering advisory and consulting services, merger and acquisition services, and digital solutions services.

7. RSA is a computer and network security company.

8. Connor Group and RSA entered into a Master Relationship Agreement effective as of December 10, 2020 (the "Agreement"). A copy of the Agreement is attached hereto as **Exhibit A**.

9. Pursuant to the terms of the Agreement, RSA retained Connor Group to assist in the planning and implementation of Oracle's NetSuite platform as an enterprise resource planning system, to design and build integrations in RSA's technology landscape, and to provide support services to RSA in connection with the system (the "Project").

10. The Agreement provides for RSA to compensate Connor Group in exchange for Connor Group's services performed in connection with the Project. Pursuant to the

"Additional Terms to Services Schedule" annexed to and incorporated in the Agreement, RSA was to pay Connor Group hourly rates for the services provided by each of Connor Group's professionals. Connor Group discounted the hourly rates for its professionals by 25%-35% during the course of its relationship with RSA as provided by the Agreement.

11. Pursuant to the Agreement, the scope of the Project was for Connor Group to provide RSA with an out-of-the-box implementation of Oracle's NetSuite platform without any customizations and integration services. At the time of the execution of the Agreement, the approximate estimated cost of an out-of-the-box implementation of the NetSuite platform by Connor Group was $5,000,000.00.

12. Pursuant to the "Services Rider" annexed to and incorporated in the Agreement, the initial scope of Connor Group's work related to the Project was detailed in a Services Schedule ("SOW-1") also annexed to the Agreement that set forth the nature and cost of Connor Group's services.

13. Over the course of the 18 months following the execution of the Agreement, RSA heavily customized and significantly expanded the scope of the Project to include Connor Group implementing instances of NetSuite for not only RSA, but also four of RSA's subsidiaries: Outseer, Archer, NetWitness, and SecurID. RSA also requested that Connor Group heavily customize and perform substantial maintenance on the system. The Project also grew to include hundreds of points of integrations with the NetSuite platform and other technologies (i.e., the connection of NetSuite deployments with other of RSA's databases, systems, apps, and endpoints).

14. The substantial additional services that RSA requested and approved increased the total cost of the services provided by Connor Group to over $14,000,000.00, even accounting for the discounts that Connor Group provided to RSA during the course of the Project.

15. Connor Group and RSA executed additional SOWs and amendments to the same (collectively with the Agreement, the "Contract Documents") that further defined the services that Connor Group provided to RSA and otherwise incorporated the terms of the Agreement. The additional SOWs and the amendments to the same were executed to accommodate the above-described growth of the Project.

16. The parties executed SOWs and amendments that were effective as of February 1, 2021 ("SOW-2") (attached hereto as **Exhibit B**), September 28, 2021 ("SOW-3") (attached hereto as **Exhibit C**), January 1, 2022 ("SOW-4") (attached hereto as **Exhibit D**), March 15, 2022 ("SOW-5") (attached hereto as **Exhibit E**), and March 22, 2022 ("SOW-6") (attached hereto as **Exhibit F**).

17. The SOWs and amendments did not amend the manner by which Connor Group was to be compensated. That is, pursuant to the Contract Documents, Connor Group was to be compensated by RSA on a time and materials basis based on the number of hours worked by Connor Group personnel. The Contract Documents did set forth the number of hours that would be worked by Connor Group's personnel under each of the SOWs.

18. The positions held by Connor Group's professionals who worked on the Project included, but were not limited to, Staff, NetSuite Developers, Associates, Seniors, Supervising Seniors, Managers, Senior Managers, Directors, and Partners. As set forth in the Contract Documents, the work of Connor Group's personnel was billed to RSA at discounted hourly rates that varied depending on the level of seniority of each of Connor Group's personnel.

19. On or about April 29, 2022, Connor Group issued Amendment C to SOW-2 ("Amendment C") and Amendment D to SOW-2 ("Amendment D"). Copies of Amendment C and Amendment D are attached hereto as **Exhibit G** and **Exhibit H**, respectively.

20. The purpose of Amendment C and Amendment D was for Connor Group to continue to provide support services at the request of RSA.

21. Connor Group transmitted Amendment C and Amendment D to RSA for approval on May 2, 2022.

22. In an email dated May 2, 2022, Kerstin Porter, RSA's Program Lead for the Project, acknowledged receipt of Amendment C and Amendment D and confirmed that "these look fine." A copy of the email from Ms. Porter of RSA to members of Connor Group is attached hereto as **Exhibit I**.

23. RSA directed Connor Group to proceed with the work outlined in Amendment C and Amendment D. Connor Group's work under Amendment C began in mid-April of 2022. Connor Group's work under Amendment D began in May of 2022.

24. Between April of 2022 and June of 2022, Connor Group performed services on RSA's behalf and at RSA's request pursuant to the Contract Documents, including Amendment C and Amendment D.

25. RSA accepted all services performed by Connor Group pursuant to Amendment C and Amendment D.

26. The compensation RSA owed Connor Group for the services performed by Connor Group pursuant to Amendment C and Amendment D totaled $633,592.00.

27. All services provided by Connor Group to RSA from the commencement of the Project and until June of 2022 were done pursuant to RSA's direction, oversight, and approval, including the work performed under Amendment C and Amendment D.

28. Connor Group fulfilled all of its obligations to RSA and satisfactorily provided services to RSA and its subsidiaries throughout the course of the Project.

29. In accordance with the Agreement and the parties' course of dealing, Connor Group regularly sent proper invoices, cost estimates, and status updates to RSA.

30. In accordance with Section 3.1 of the Agreement, Connor Group submitted invoices to RSA on a monthly basis, which were required to be paid within forty-five days of Connor Group's delivery of the monthly invoices to RSA.

31. RSA has failed and refused to pay seven of Connor Group's outstanding invoices, despite RSA's receipt of and obligation to pay the same, and despite Connor Group's provision of written notice to RSA that the invoices have not been paid pursuant to Section 3.1 of the Agreement. RSA's conduct in this regard is in breach of its obligations pursuant to the Contract Documents.

32. Specifically, RSA has failed to pay the following invoices issued by Connor Group: (1) Invoice No. 18115 dated March 31, 2022 in the amount of $681,558.99, (2) Invoice No. 18116 dated March 31, 2022 in the amount of $67,572.93, (3) Invoice No. 18528 dated April 30, 2022 in the amount of $566,902.06 (related in part to Amendment C), (4) Invoice No. 18529 dated April 30, 2022 in the amount of $103,005.15, (5) Invoice No. 18969 dated May 31, 2022 in the amount of $342,430.43 (related in part to Amendment C and Amendment D), (6) Invoice No. 18970 dated May 31, 2022 in the amount of $20,285.25, and (7) Invoice No. 19410 dated June 30, 2022 in the amount of $24,876.44 (related to Amendment C and Amendment D). These invoices are attached hereto as **Exhibit J**.

33. An invoice schedule that demonstrates all amounts that currently are owed by RSA to Connor Group is attached hereto as **Exhibit K**.

34. Connor Group paused its performance of services for RSA's benefit on or about June 9, 2022, when RSA unexpectedly advised that certain of Connor Group's work related

to Amendment C had not been approved. RSA advised that it would obtain its internal approvals needed to continue the Project. After Connor Group made multiple inquiries regarding the status of the Project and outstanding payments owed to Connor Group, RSA advised that it would not remit any further payment to Connor Group on or about July 29, 2022.

35. Connor Group has performed all of its obligations in accordance with the Contract Documents, and so any contention that RSA is unhappy with the services provided by Connor Group is without merit.

36. In short, in breach of the Contract Documents, RSA has failed to pay the balance of $1,806,631.25 that is due and owing to Connor Group as more fully set forth in Exhibit J and Exhibit K.

37. In addition, pursuant to Section 3.1 of the Agreement and in breach of same, RSA owes and has failed to pay to Connor Group late fees totaling $209,667.00.

38. The late fees that are owed by RSA to Connor Group continue to accrue, and RSA's failure to pay them constitutes a continuing breach of its contractual obligations to Connor Group.

39. As of March 1, 2023, the total amount due and owing from RSA to Connor Group is $2,016,298.25.

**FIRST CAUSE OF ACTION**
**(Breach of Contract)**

40. Connor Group repeats and realleges the allegations set forth in paragraphs 1 through 39 of this Complaint with the same force and effect as if set forth at length herein.

41. The Contract Documents constitute valid and enforceable contracts between the parties.

42. The Contract Documents define the scope and cost of the services that Connor Group performed for RSA during the course of the Project between December of 2020 and June of 2022.

43. The terms of the Contract Documents obligated RSA to pay Connor Group for its work on the Project on a time and materials basis based on the number of hours that Connor Group's professionals spent working on the Project.

44. Connor Group fully performed its obligations under the Contract Documents, provided services to RSA in accordance with the Contract Documents, and complied with all terms and conditions of the same.

45. RSA has accepted and retained the benefit of all of Connor Group's work performed pursuant to the Contract Documents, including the work performed by Connor Group pursuant to Amendment C and Amendment D.

46. Pursuant to Section 3 of the Agreement, Connor Group sent proper and accurate invoices to RSA for the services that Connor Group performed pursuant to the Contract Documents.

47. RSA has breached the Contract Documents, by, among other things, failing and refusing to make payments in full for the services provided as reflected in the proper invoices submitted by Connor Group pursuant to Section 3.1 of the Agreement.

48. Pursuant to Section 3.1 of the Agreement, Connor Group has provided written notice to RSA that certain of Connor Group's invoices remain unpaid.

49. There remains an outstanding balance of $1,806,631.25 due and owing to Connor Group for services that Connor Group performed pursuant to the Contract Documents.

50. RSA also owes late fees to Connor Group per Section 3.1 of the Agreement in an amount not less than $209,667.00.

51. Based on the foregoing, Connor Group demands judgment in an amount not less than $2,016,298.25, along with pre-judgment interest, post-judgment interest, costs, disbursements, attorneys' fees, and any and all further relief to which it is entitled.

## SECOND CAUSE OF ACTION
**(Unjust Enrichment)**

52. Connor Group repeats and realleges the allegations set forth in paragraphs 1 through 51 of this Complaint with the same force and effect as if set forth at length herein.

53. Connor Group provided extensive services to RSA during the course of the Project.

54. RSA knew and appreciated that Connor Group was performing services on its behalf throughout the duration of the Project.

55. RSA has accepted all of the services provided by Connor Group.

56. In light of RSA's acceptance of all of the services provided by Connor Group during the course of the Project, Connor Group reasonably expected that RSA would provide full and complete payment to Connor Group for the services rendered.

57. RSA has refused to make full payment for the services provided by Connor Group.

58. There remains an outstanding balance of $1,806,631.25 due and owing to Connor Group for the services that it provided, in addition to late fees not less than $209,667.00.

59. By reason of the acts of RSA, as aforesaid, and without any wrongdoing on the part of Connor Group, RSA was unjustly enriched to Connor Group's detriment, such that it would be inequitable for RSA to retain the benefit of Connor Group's services without compensating Connor Group for the same.

60. Based on the foregoing, Connor Group demands judgment in an amount not less than $2,016,298.25, along with pre-judgment interest, post-judgment interest, costs, disbursements, attorneys' fees, and any and all further relief to which it is entitled.

**THIRD CAUSE OF ACTION**
**(Quantum Meruit)**

61. Connor Group repeats and realleges the allegations set forth in paragraphs 1 through 60 of this Complaint with the same force and effect as if set forth at length herein.

62. Throughout the course of the parties' relationship, Connor Group provided services to RSA.

63. Connor Group reasonably expected to be compensated for the services that it provided to RSA.

64. Throughout the entirety of the relationship between Connor Group and RSA, RSA accepted the benefit of the services provided by Connor Group.

65. Despite RSA's acceptance of Connor Group's services, RSA has refused to pay the amounts invoiced by Connor Group to RSA in full.

66. RSA had actual knowledge of Connor Group's reasonable expectation to be compensated for the services provided because RSA received monthly invoices from Connor Group requesting payment for the aforementioned services.

67. The fair and reasonable cost of the services provided by Connor Group for which RSA has not paid is $1,806,631.25, in addition to late fees not less than $209,667.00.

68. Despite due demand therefor, RSA has wrongfully and without justification withheld payment in the amount of $2,016,298.25.

69. Based on the foregoing, Connor Group demands judgment in an amount not less than $2,016,298.25, along with pre-judgment interest, post-judgment interest, costs, disbursements, attorneys' fees, and any and all further relief to which it is entitled.

## FOURTH CAUSE OF ACTION
**(Account Stated)**

70. Connor Group repeats and realleges the allegations set forth in paragraphs 1 through 69 of this Complaint with the same force and effect as if set forth at length herein.

71. Connor Group submitted numerous invoices to RSA in connection with Connor Group's services related to the Project as set forth in Exhibit J.

72. RSA received and retained each invoice submitted by Connor Group without timely or proper objection.

73. RSA had actual or chargeable knowledge of Connor Group's reasonable expectation to be compensated for the services provided because RSA received monthly invoices from Connor Group requesting payment for the aforementioned services.

11

74. RSA has not remitted payment to Connor Group with respect to the invoices, despite Connor Group's demand for payment in full.

75. Based on the foregoing, Connor Group demands judgment in an amount not less than $2,016,298.25, along with pre-judgment interest, post-judgment interest, costs, disbursements, attorneys' fees, and any and all further relief to which it is entitled.

**FIFTH CAUSE OF ACTION**
**(Estoppel)**

76. Connor Group repeats and realleges the allegations set forth in paragraphs 1 through 75 of this Complaint with the same force and effect as if set forth at length herein.

77. Throughout the entirety of the relationship between Connor Group and RSA, RSA accepted the services provided by Connor Group, and RSA represented to Connor Group that RSA would remit payment to Connor Group in exchange for the same.

78. Connor Group reasonably relied on RSA's representations that RSA would remit payments to Connor Group in exchange for Connor Group's services.

79. Connor Group performed services on RSA's behalf to the detriment of Connor Group because RSA has not remitted payment in full to Connor Group in exchange for these services.

80. Connor Group paused all of its work on the Project on or about June 9, 2022 because at least one of its outstanding invoices had not been paid and because RSA unexpectedly advised Connor Group that certain of the work being performed by Connor Group had not been approved. RSA has since refused to remit payment in full to Connor Group.

81. As a result of all of the foregoing, Connor Group was left with balances due and owing for services provided to RSA.

82. By reason of the acts of RSA, as aforesaid, and without any wrongdoing on the part of Connor Group, RSA was wrongfully enriched to Connor Group's detriment.

83. Based on the foregoing, Connor Group demands judgment in an amount not less than $2,016,298.25, along with pre-judgment interest, post-judgment interest, costs, disbursements, attorneys' fees, and any and all further relief to which it is entitled.

**DEMAND FOR JURY TRIAL**

84. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Connor Group demands a trial by jury in this action of all issues so triable.

**PRAYER FOR RELIEF**

Plaintiff, Connor Group, demands judgment as follows:

(1) On its first cause of action for breach of contract, a judgment in an amount to be determined at trial, along with pre-judgment interest, post-judgment interest, costs, disbursements, attorneys' fees, and any and all further relief to which it is entitled;

(2) On its second cause of action for unjust enrichment, a judgment in an amount to be determined at trial, along with pre-judgment interest, post-judgment interest, costs, disbursements, attorneys' fees, and any and all further relief to which it is entitled;

(3) On its third cause of action for quantum meruit, a judgment in an amount to be determined at trial, along with pre-judgment interest, post-judgment interest, costs, disbursements, attorneys' fees, and any and all further relief to which it is entitled;

(4) On its fourth cause of action for account stated, a judgment in an amount to be determined at trial, along with pre-judgment interest, post-judgment interest, costs, disbursements, attorneys' fees, and any and all further relief to which it is entitled;

(5) On its fifth cause of action for estoppel, a judgment in an amount to be determined at trial, along with pre-judgment interest, post-judgment interest, costs, disbursements, attorneys' fees, and any and all further relief to which it is entitled; and

(6) That this Court award such other further relief, together with any other legal or equitable relief, or both, as the Court deems just and proper.

[The remainder of this page is intentionally left blank]

Dated: March 3, 2023

        **PAIK, BREWINGTON & DEAL, LLP**
        *Counsel for Plaintiff*
        *Connor Group Global Services, LLC*

        _____
            Alexandra H. Deal, BBO No. 660645
        6 Beacon Street, Suite 305
        Boston, Massachusetts 02108
        Phone: (617) 439-0150
        adeal@pbdlaw.com

        and

        **RUPP PFALZGRAF LLC**
        *Counsel for Plaintiff*
        *Connor Group Global Services, LLC*

        _____
            Aaron W. Knights, Esq.
            *Admission Pro Hoc Vice Forthcoming*
        1600 Liberty Building
        Buffalo, New York 14202
        Phone: (716) 854-3400
        knights@rupppfalzgraf.com